**MOTHER FRANCES
HOSPITAL, Relator,**

v.

**The Honorable William E. COATS,
Judge of the 7th Judicial District
Court, Smith County, Texas,
Respondent.**

No. 12–90–00256–CV.

Court of Appeals of Texas,
Tyler.

Sept. 14, 1990.

Jack Flock, Mike Hatchell, Tyler, Craig Smyser, Houston, James Williams, Prof. William Dorsaneo, Dallas, for relator.

W.E. Coats, Tyler, pro se.

Paul F. Waldner, Houston, Larry Jones, Tyler, for respondent.

PER CURIAM.

In this original mandamus proceeding, Relator, Mother Frances Hospital (hereinafter "the Hospital"), seeks to compel the Respondent, Judge Coats, to vacate an order by which Judge Coats struck the hospital's designation of eight expert witnesses and limited the testimony of eight other designated experts to the opinions given in their depositions. The underlying lawsuit is a medical malpractice action brought against the hospital and others by Shirley Clark individually, and as next friend for her husband, Alva Dean Clark (hereinafter "Clark"), the real parties in interest. Clark has filed a response in this mandamus action.

In February, 1989, Clark filed suit against the hospital, Drs. Steven Gaede, Guy O. Danielson, and H.D. Smith alleging injuries and damages as a result of brain surgery performed on the wrong side of his brain. In March, 1989, Clark posed interrogatories to the defendants, including one asking the identity of expert witnesses each defendant intended to have testify. In April or May[1] of 1989, the hospital responded to the interrogatories, saying that no experts had as yet been chosen but that the answer would be supplemented when they were retained. In August, 1989, the hospital filed a motion for summary judgment supported by affidavits, including one from a nurse named June Murphy. In September, 1989, Clark designated five expert witnesses: Dr. Thomas Mims, a neurosurgeon; Dr. Hal Unwin, a neurosurgeon; Fransisco Perez, a neuropsychologist; Carol Beatty, a nurse; and Linda Dean, a nurse. Settlement negotiations were ongoing and depositions were taken of some twenty to twenty-five witnesses.

---

1. The testimony of Clark's attorney is unclear as to whether it was April or May.

Sometime thereafter, the trial court specially set the case for trial on September 4, 1990.[2] In February, 1990, Dr. Gaede, the defendant neurosurgeon who performed the surgery on Clark, settled with Clark. The settlement was heard by the trial court and approved in April, 1990. On May 1, 1990, the hospital filed its first amended answer, in which it cross claimed for contribution or indemnity from the other defendants. About July 3, 1990, Clark designated as additional expert witnesses economist Tim Crane and psychologist Dr. Fries.

On August 3, 1990, the hospital filed and served its supplemental answers to Clark's interrogatories. In the supplemental answer, the hospital designated the following expert witnesses:

1. Charles Leggett — actuary and annuitist
2. June Murphy — R.N. and B.S.N.
3. Clark Watts, M.D. — Neurosurgeon
4. Barry Rath — Neuropsychologist
5. Richard Willms, M.D. — Chief of Medicine at the hospital at the time of Clark's surgery
6. Ayub Ommaya, M.D. — Expert on arteriovenous malformations
7. J.M. Barrash, M.D. — Neurosurgeon
8. Duke Samson, M.D. — Neurosurgeon
9. F.J. Pirozzolo — Neuropsychologist
10. Michele Tholcken — Rehabilitation Nurse
11. J. Lindsey Bradley — President, Mother Frances Hospital
12. Maureen Lake, R.N. — Nursing supervisor
13. Steven Gaede, M.D. — Neurosurgeon
14. Guy Danielson, M.D. — Neurosurgeon
15. David Unwin, M.D. — Neurosurgeon
16. Preston Harrison, M.D. — Neurologist
17. Peggy Heath, R.N. — Operating room nurse

On August 7, 1990, Clark filed a motion to strike the hospital's designation of expert witnesses. It was Clark's position that the designations were untimely in light of the fact that the case was set for trial on September 4, 1990. Clark contended that the hospital was required to show good cause for the "late" designation or have the designation stricken. The only relief specifically requested in the motion was the striking of the designation of the expert witnesses.

The trial court heard the motion to strike[3] on August 10, 1990. Testimony was heard from the attorneys for Clark (Paul Waldner), the hospital (Craig Smyser and Jack Flock), and from the attorney for Dr. Danielson.[4] Mr. Waldner testified that the case had been filed for approximately one and one-half years and that the hospital had at no time prior to August 3, 1990, designated any expert witnesses despite an interrogatory to that effect served shortly after the case was filed. Mr. Smyser testified that he had just joined the hospital's defense team in late June, 1990, and through his efforts the first contact with several of the designated experts was made. Mr. Flock testified that the plaintiff's efforts had been focused on Dr. Gaede until April when Clark settled with Gaede, and at approximately that time, Clark's theory against the hospital had shifted, requiring the hospital to more aggressively pursue potential expert witnesses to testify on its behalf.

After the hearing, Judge Coats signed an order which recites:

1. The Defendants have failed to show that good cause exists for allowing the designation of the following expert witnesses:

   A. J.M. Barrash, M.D.
   B. June Murphy, R.N.
   C. Clark Watts, M.D.
   D. Ayub Khan Ommaya, M.D.
   E. Barry Rath, Ph.D.
   F. Duke Samson, M.D.
   G. Francis Pirozzolo, Ph.D.; and
   H. Michele Tholcken, R.N.

2. The Defendants have shown good cause exists for allowing the designation of the following expert witnesses:

   A. Charles Leggett;
   B. J. Lindsey Bradley;
   C. Maureen Lake, R.N.;
   D. Richard Willms, M.D.;
   E. Steven Gaede, M.D.;

---

**2.** The case had been specially set for June 4, 1990, but was postponed to September due to conflicts in scheduling.

**3.** Also pending was a motion of the hospital's to strike Clark's designation of experts.

**4.** The motion to strike was also aimed at Danielson's August 1 designation of expert witnesses. The merits of that motion and the resulting order are not at issue in this mandamus proceeding. *See Order of August 29, 1990, Danielson v. Coats,* No. 12–90–00251–CV.

F.  Guy O. Danielson, M.D.;

G.  David Hal Unwin, M.D.;

H.  Preston Harrison, M.D.;

I.  Peggy Heath, R.N.

. . . .

It is therefore, ORDERED, ADJUDGED AND DECREED that Defendants' designation of witnesses Barrash, Murphy, Watts, Ommaya, Rath, Samson, Pirozzolo, and Tholcken is hereby struck. It is further ORDERED, ADJUDGED AND DECREED that the Defendants' designation of witnesses Bradley, Lake, Willms, Gaede, Danielson, Unwin, Harrison, and Heath shall be allowed, and any opinions these witnesses are called upon to give at the trial of this cause shall be limited to those opinions expressed in their deposition testimony.

■ Mandamus is an extraordinary remedy and the writ will issue only to correct a clear abuse of discretion or a violation of a duty imposed by law where there is no adequate alternative remedy at law. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). "The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles ... whether the act was arbitrary or unreasonable." *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–242 (Tex. 1986). The relator must establish that under the law and the facts of the case the trial court was permitted to make but one decision and it did not make that decision. *Onda Enterprises, Inc. v. Pierce,* 750 S.W.2d 812 (Tex.App.–Tyler 1988) (orig. proceeding).

In the case before us, the relator contends that the respondent abused his discretion in three ways. First, that Judge Coats abused his discretion in interpreting the phrase "as soon as is practical" in TEX.R.CIV.P. 166b(6) to mean that experts must be retained and a decision made to have them testify "as soon as practical" in any given case and be subject to the trial judge's opinion as to whether such action was in fact "as soon as practical." Second, that the Respondent abused his discretion in requiring the Relator to prove good cause for designating its expert witnesses more than thirty days before trial. Finally, the hospital urges that the trial court abused its discretion restricting the testimony of eight of the designated witnesses because the relief granted was never requested by Clark and was never discussed at the hearing.[5]

■ As the issue in this case is whether the hospital properly and timely supplemented its answers to Clark's interrogatories, our decision is governed by TEX.R. CIV.P. 166b(6). Rule 166b(6) provides in pertinent part:

A party who has responded to a request for discovery that was correct and complete when made is under no duty to supplement his response to include information thereafter acquired, except the following shall be supplemented **not less than thirty days prior to the beginning of trial** unless the court finds that a good cause exists for permitting or requiring a later supplementation.

. . . .

b.  If the party expects to call an expert witness when the identity or the subject matter of such expert witness' testimony has not been previously disclosed in response to an appropriate inquiry directly addressed to these matters, such response must be supplemented to include the name, address and telephone number of the expert witness and the substance of the testimony concerning which the expert witness is expected to testify, **as soon as practical, but in no event less than thirty (30) days prior to the beginning of trial.**

---

**5.** The hospital also complains that the trial judge ruled on the hospital's motion to strike Clark's designation of two expert witnesses when that motion was not considered at the hearing. The record does not support this position. Therefore, we decline to consider this issue.

The clear language of the Rule provides a starting point for supplementation of answers to interrogatories directed at discovery of expert witnesses who will testify at trial; such answers must be supplemented at least thirty days before trial begins. In this case, the supplemental answers were filed and served more than thirty days before the scheduled trial date so we must look to the Rule to see if any other restrictions apply. The Rule does in fact supply the further restriction of "as soon as practical." The precise application of this restriction is the core of this case. From the order of Judge Coats, it is unclear that he even considered this restriction. His order simply recites that the defendants did not show good cause for allowing the designation of eight experts and did show good cause for the designation of nine others.

We are unable to find any Rule or principle that requires a party to show good cause for designating an expert witness, unless the designation is made *less than* thirty days before trial, see TEX.R.CIV.P. 166b(6), or the responding party completely fails to disclose evidence requested in discovery at all, see TEX.R.CIV.P. 215(5). The good cause requirement in Rule 166b(6) clearly applies only to supplementation of discovery responses made *after* the thirtieth day before trial. *See Gee v. Liberty Mutual Fire Insurance Co.*, 765 S.W.2d 394, 395 (Tex.1989); *E.F. Hutton & Co., Inc. v. Youngblood*, 741 S.W.2d 363, 364 (Tex.1987); *Ramos v. Champlin Petroleum Co.*, 750 S.W.2d 873, 876 (Tex.App.— Corpus Christi 1988, writ denied). Rule 215(5) requires a showing of good cause by a party seeking to introduce evidence which he was under a duty to disclose in discovery but did not disclose. *Gee*, 765 S.W.2d at 395–396; *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 297–298 (Tex.1986). Neither of those situations is present in this case.

Clark interprets several of the above-cited Supreme Court cases as supporting his position that the hospital was required to show good cause to avoid having its designation of experts stricken. What he fails to recognize is that in each of those cases the Court was dealing with the situation in which a party failed entirely to designate a witness or witnesses, or failed to supplement its answers to interrogatories.[6]

Clark also relies heavily on the San Antonio Court of Appeals' decision in *Builder's Equipment Co. v. Onion*, 713 S.W.2d 786 (Tex.App.–San Antonio 1986) (orig. proceeding). In that mandamus proceeding, the Court was faced with a problem similar to that in the case before us; that is, where the defendant in a civil lawsuit did not identify its expert witnesses until shortly before the thirtieth day before the trial setting. The San Antonio Court found that in adding the phrase "as soon as practical" to Rule 166b(5)(b),[7] the Supreme Court vested the trial court with the "discretion to determine whether relator used due diligence in *seeking out and identifying ... its expert witnesses.*" *Id.* 713 S.W.2d at 788. No authority is cited by the San Antonio Court for that interpretation of the requirements of Rule 166b(6). Our Supreme Court has stated numerous times that the deadline for designation of experts and supplementation of discovery is on the thirtieth day before trial. *See Gee; E.F. Hutton.* In the absence of a specific order,

---

6. In *Gee*, the plaintiff named two fact witnesses and one expert in response to discovery requests. At trial, the plaintiff was allowed, over objection to present the testimony of two undisclosed fact witnesses and two undisclosed expert witnesses. The defendant in *Gutierrez* initially disclosed two witnesses in response to interrogatories. One week before trial the defendant supplemented its answer naming two other witnesses, and at trial produced another as yet undisclosed expert witness. The Supreme Court, reversing and remanding for a new trial, determined that the undisclosed expert should not have been allowed to testify because no good cause was shown. In *E.F. Hutton & Co., Inc. v. Youngblood,* the issue involved the testimony of two expert witnesses who were never identified prior to trial. The issue in the *Morrow* case was whether the testimony of a witness who was identified in response to discovery but whose address was later discovered by the answering party to be different than that given in its initial response, should have been excluded at trial when the interrogatory answer was never supplemented.

7. Now at Rule 166b(6).

**571**

there is nothing in the Rules which requires a party to "seek out" its expert witnesses at any particular time during the pre-trial process.[8] We decline Clark's invitation to follow the *Builder's Equipment* decision. Further, we are of the opinion that the rationale behind that decision is incorrect.

■ The rules which the respondent in this case was bound to follow are contained in the plain language of Rule 166b(6) and the precedents of our Supreme Court. He applied a standard which has no basis in the law when the facts of this case are considered. Judge Coats clearly abused his discretion when he ordered the striking of the hospital's designation of seven of the experts more than thirty days before the scheduled trial date. The eighth expert, nurse June Murphy, presents a different question. Clearly the hospital made the decision to rely upon her expert testimony in August 1989 when it used her affidavit in support of its motion for summary judgment. Because designation of Murphy as an expert witness, almost one full year after that decision, was not "as soon as practical" by any definition, we decline to find any abuse of discretion in the striking of her designation.

■ We move next to the hospital's contention that to the extent the trial court limited the testimony of nine other of its designated expert witnesses to the opinions those witnesses expressed in their depositions, the trial court abused its discretion because such relief was never requested by Clark. Clark has given notice to the hospital, with a copy included in its response filed in this matter, that it will not object at trial to any opinion any of these witnesses expresses at trial. He urges therefore that this aspect of the mandamus proceeding is moot. However, there is no indication that the trial court has assented to the full testimony of these witnesses, and in view of its order restricting such testimony, the

mere lack of an objection by Clark would be irrelevant if the trial court *sua sponte* enforces its order. Beyond his assurances that he will not object at trial, Clark does not respond to this point. In so limiting the testimony the trial judge was without authority.

■ A trial judge may impose sanctions for discovery abuse as authorized by TEX.R. CIV.P. 215. There was no abuse of the discovery process by the hospital in designating its expert witnesses more than thirty days before trial, no sanctions were authorized. Further, Clark did not request such relief in his motion to strike the designation, and limitation of testimony is not one of the sanctions set out in Rule 215. "Notice is essential for the proper imposition of sanctions." *Zep Manufacturing Co. v. Anthony,* 752 S.W.2d 687, 690 (Tex. App.—Houston [1st Dist.] 1988) (orig. proceeding). Judge Coats' limitation of the testimony of nine of the hospital's expert witnesses constituted a clear abuse of discretion.

■ Having decided that the order at issue was a clear abuse of discretion, we must address Clark's contention that mandamus will not lie because the hospital has an adequate remedy by appeal. We do not agree. The scope of situations in which mandamus petitions are entertained and granted in the discovery setting has been greatly expanded in recent years. *See* Edgar, *Mandamus and Other Original Proceedings in Appellate Courts,* 1989 ADVANCED APPELLATE PRACTICE COURSE MANUAL C:17–23. To paraphrase the Supreme Court in *Jampole v. Touchy,* 673 S.W.2d 569, 576 (Tex.1984), to require a party to try his lawsuit, debilitated by improper discovery practices, only to have the lawsuit rendered a certain nullity on appeal, falls well short of a remedy by appeal that is equally convenient, beneficial, and effective as mandamus. In this case, it is difficult to see how the emasculation of the hospital's

**8.** TEX.R.CIV.P. 166b(2)(e)(3) authorizes the trial judge to compel a determination and disclosures of testifying experts within a reasonable time before trial, but this was *not* done in the case before us. Even in such a case, the party

subject to the order must be given time to designate its experts after the order. *See Loftin v. Martin,* 776 S.W.2d 145, 147 (Tex.1989) (orig. proceeding).

defense of this lawsuit could be harmless. The trial court clearly abused its discretion in entering the sanction order. We conclude that appeal is not an adequate remedy for the action taken in this case.[9]

The writ of mandamus is conditionally granted. The writ shall not issue if Respondent Judge Coats forthwith vacates his August 15, 1990, order striking the designation of certain of the Relator's expert witnesses and limiting the testimony of others.

---

**9.** It is interesting to note that the case on which Clark so heavily relies on the merits of this matter, *Builder's Equipment* is an original mandamus proceeding in the court of appeals. No mention is made in that case about the adequacy of appeal as a remedy. Further, in *Zep Mfg.,* the Court of Appeals addresses the issue of whether appeal was an adequate remedy for review of sanctions imposed for discovery abuse and concluded that when the sanctions were final, it was not.