**Van E. McFARLAND, Appellant,**

v.

**Lawrence W. SZAKALUN, Professional Anesthesiology Associates Defined Pension Plan, and William A. Estrada, Appellees.**

**No. B14–90–00143–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

April 11, 1991.

Rehearing Overruled May 30, 1991.

---

Van E. McFarland, Houston, for appellant.

Janet M. Douvas, Houston, for appellees.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

Van McFarland appeals from an order on discovery sanctions. That order granted interlocutory default judgment against

McFarland's clients, and ordered him to pay attorney's fees to the opposing parties. In five points of error, McFarland claims the trial court improperly found him vicariously liable for his clients' conduct, and the manner in which sanctions were imposed did not provide notice or due process. Concluding the trial court had authority to sanction McFarland, we affirm.

Initially, we address appellees' motion to correct erroneous style of this appeal. This case was originally styled "Van E. McFarland v. Janet M. Douvas, Gary K. Siller, Lawrence W. Szakalun, et. al." Because Janet M. Douvas and Gary K. Siller are the attorneys for appellees, they are not proper parties to this appeal. Therefore, we change the style to read, "Van E. McFarland v. Lawrence W. Szakalun, Professional Anesthesiology Associates Defined Benefit Pension Plan, and William A. Estrada."

Appellees filed motions to strike pleadings, enter default judgment, for contempt, and for sanctions against Van McFarland and his client, Clyde Wilson. Those motions alleged that appellees served a notice of oral deposition duces tecum on McFarland, notifying him that they intended to take Wilson's deposition on October 18, 1988. On the day the deposition was scheduled, Wilson arrived late without McFarland. Douvas did not proceed with the deposition because she understood that she could not proceed in McFarland's absence because Wilson was a party in the case and his attorney of record was McFarland.

Appellees alleged discovery abuses concerning production of documents. Appellees filed requests for production of certain documents, including contracts, bank account statements, and income tax returns. When appellees did not receive all the documents they requested, they were informed the documents were in Salisbury, Maryland. Douvas went to Maryland to retrieve the documents. When she arrived in Maryland, she was denied access to certain contracts. When she asked for other documents, she was told that some of them were in Houston, that they did not exist, or

that they had been lost. Further, the documents to be produced had not yet been designated for production and would require several hours to collect.

The trial court granted sanctions against McFarland and his client for those discovery abuses and other abuses determined at the hearing on sanctions and contempt. McFarland now claims he as the attorney is not subject to sanctions when there is no evidence that he advised his client to frustrate discovery. In his first, second, and fifth points of error, McFarland claims the trial court erred in holding him vicariously liable for the conduct of his clients, that the trial court's awards are not authorized by Texas Rule of Civil Procedure 215, and that the discovery abuse is not attributable to his advice.

The trial court, sitting as a trier of fact, has both the right and the duty to weigh the evidence and to draw reasonable inferences and deductions. *Alkas v. United Savings Association of Texas, Inc.* 672 S.W.2d 852, 856 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e). The trial court has broad discretion in imposing sanctions for discovery abuses. *Chemical Exchange Industries v. Vasquez*, 709 S.W.2d 257, 260 (Tex.App.—Houston [14th Dist.] 1986), *rev'd in part on other grounds*, 721 S.W.2d 284 (Tex.1986). The use of sanctions by trial courts to prevent discovery abuse has developed steadily over the past several years. These changes reflect the continuing pattern both to broaden the discovery process and to encourage sanctions for failure to comply. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The Supreme Court also approves the use of sanctions to deter abuse of the process in addition to ensure compliance with discovery. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). As long as sanctions chosen by the trial court for abuse of discovery process are within the authority vested in the trial court, we will not overturn the court's order unless there is a clear abuse of discretion. *Bos-*

*nich v. National Cellulose Corp.*, 676 S.W.2d 446, 447 (Tex.App.—Houston [1st Dist.] 1984, no writ).

██ The issue here is whether the trial court has authority to sanction the attorney for discovery abuses that are attributed to the client and the attorney. Rule 215 of the Texas Rules of Civil Procedure provides:

If the court finds a party is abusing the discovery process in seeking, making or resisting discovery or if the court finds that any interrogatory or request for inspection or production is unreasonably frivolous, oppressive, or harassing, or that a response or answer is unreasonably frivolous or made for purposes of delay, then the court in which the action is pending may impose any sanction authorized by paragraphs (1), (2), (3), (4), (5), and (8) of paragraph 2b of this rule.

Paragraph 2b provides for the following sanction:

(2) An order charging all or any portion of the expenses of discovery or taxable court costs or both against the disobedient party or the attorney advising him.

We can find no prior case authority on this particular sanction, so we turn to the federal rule and its interpretation for guidance. Federal Rule of Civil Procedure 37(d) provides:

If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall re-

quire the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The cases interpreting Rule 37 have determined that a party or his attorney may be required to pay reasonable expenses incurred by the innocent party for a party's failure to comply with court discovery orders. *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3rd Cir.1984); *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365 (9th Cir.1980). In *United States v. Sumitomo*, the government failed to file answers to interrogatories propounded by the opposing party. The party filed a motion seeking either sanctions, or an order compelling answers. The district court considered the government's six month series of delays and ruled that, unless the government answered the interrogatories within a specified time, the complaint would be dismissed. Despite the court's order, the government did not timely answer the interrogatories. As a result, the district court imposed a monetary sanction, payable to the opposing party against the government's counsel. The court found there was a willful and callous disregard of court orders and discovery procedures by government counsel and that it was a continuing course of conduct. The court of appeals found that rule 37(b) allowed the sanction against the attorney for the disobedient party. *United States v. Sumitomo*, 617 F.2d at 1371.

In *Poulis v. State Farm*, the sanction assessed was dismissal. In that case, Poulis failed to answer interrogatories propounded by State Farm by the date the district court set for the close of discovery, and failed to file his pretrial statement with the court by the designated time. The district court dismissed the case with prejudice for Poulis's failure to comply with its orders. The court of appeals concluded that dismissal was too harsh a sanction, but stated:

The district court also could have imposed on plaintiffs' counsel the costs, including attorney's fees, of preparing the motion to compel answers to interrogatories and the brief on alternative sanctions, all of which were incurred because of the dilatoriness of plaintiffs' counsel.

*Poulis v. State Farm*, 747 F.2d at 869.

The federal courts have allowed monetary sanctions against the attorney when there is evidence that the discovery abuses were incurred because of the dilatoriness of counsel. Because rule 215 was modeled after the federal rule, we will construe rule 215 accordingly. Therefore, if the evidence showed that the discovery abuses occurred as a result of McFarland's dilatoriness, the trial court was within its authority to impose sanctions.

We have reviewed the record and have found that it does not contain the statement of facts from the first two days of the hearing on contempt and sanctions. McFarland claims that the three day hearing was truly two separate hearings and that the first two days are inapplicable to the discovery sanctions. The court, however, at the beginning of the third day of testimony, stated:

> Let the record reflect that we are resuming the hearing, Cause Number 86–36576. At this time we will take the matter of the Motion for Sanctions pertaining to discovery matters. Let's proceed.

■ As appellant, McFarland has the burden to bring forward the entire record to prove harmful error that entitles him to reversal. *See Escontrias v. Apodaca*, 629 S.W.2d 697, 699 (Tex.1982). When the record is incomplete, we must assume that the portion omitted supports the correctness of the trial court's judgment. *Chessher v. Southwestern Bell Telephone Co.*, 671 S.W.2d 901, 903 (Tex.App.—Houston [14th Dist.] 1983) *rev'd on other grounds*, 658 S.W.2d 563 (Tex.1983). Because the hearing was a combined hearing on discovery and contempt, and we only have a record of the third day of that three day hearing, we must assume the evidence

from the first two days supports the trial court's orders.

■ The evidence from the third day of the hearing shows appellees did not receive all the documents they requested. When appellees made further requests, they were informed the documents were in Salisbury, Maryland. Douvas went to Maryland to retrieve the documents but was denied access to certain contracts. When she asked for other documents, she was told that some of them were in Houston, that they did not exist, or that they had been lost. Further, the documents to be produced had not yet been designated for production and would require several hours to collect.

James Pierce, an employee of McFarland who was responsible for preparing Wilson's answers to interrogatories and responses to requests for production, testified that he did not review the document production requests with Wilson. Instead, he accepted Wilson's statement that everything had been produced.

Further, the day before Wilson's deposition, Douvas asked McFarland if she would see him at the deposition the following day. McFarland replied, "I don't know. Will you?" To which, Douvas replied, "Well, it kind of would be nice to have a definite confirmation." McFarland replied, "Yes, I bet it would." The following day, at the deposition, Wilson arrived late without McFarland. McFarland states in his brief to this court that he "determined his attendance at the deposition could not be justified economically and did not attend."

When we consider this evidence in the light most favorable to the court's judgment and consider any evidence from the first two days of the hearing in support of the judgment, we find sufficient evidence that the discovery abuses resulted from McFarland's dilatoriness, and the trial court was within its authority to impose sanctions. We overrule McFarland's first, second, and fifth points of error.

■ In his third point of error, McFarland claims the trial court's order of sanctions violates the due process clause of the United States Constitution and the Texas

Constitution, his statutory rights to zealous representation of counsel, and the right of his client to have advice kept confidential.

■ A proper application of a sanction rule will, as a matter of law, support the presumption of due process. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinea*, 456 U.S. 694, 706, 102 S.Ct. 2099, 2106, 72 L.Ed.2d 492 (1982). If the trial court did not abuse its discretion in the application of the sanction rule, then the sanction is nothing more than the invocation of a legal presumption. *Id.; Tate v. Commodore County Mutual Ins. Co.*, 767 S.W.2d 219, 225 (Tex.App.—Dallas 1989, writ denied).

We have concluded the trial court did not abuse its discretion in applying the sanction rule. Consequently, with regard to McFarland's federal claim, we conclude the trial court did not deny McFarland due process by imposing monetary sanctions against him. As to his state claim, we see no reason not to interpret the Texas Constitution as we have the United States Constitution. Therefore, the trial court did not deprive McFarland of his right to due process guaranteed by the fourteenth amendment to the United States Constitution and article 1, section 19 of the Texas Constitution. Similarly, the court's order did not deprive McFarland or Wilson of any statutory rights. We overrule McFarland's third point of error.

■ In his fourth point of error, McFarland claims the manner in which sanctions were imposed did not provide notice or due process. He first contends the trial court erred in considering matters not alleged in a written motion. McFarland claims the trial court awarded $13,169.50 in sanctions that was not prayed for in any of the plaintiffs' motions. McFarland also argues the motions for sanctions did not specify each discovery abuse for which he was sanctioned.

The motions, however, contain the general statement that "Defendant Wilson, with the aid and assistance of attorney McFarland, have [sic] repeatedly delayed discovery and impeded the progress of this case to Plaintiffs' great detriment." The

motions prayed for "all such further and additional orders which this court deems appropriate." That prayer authorizes a judgment for any relief within the court's jurisdiction justified by the proof admitted under the allegations of the motion. *See City of Abilene v. Walker*, 309 S.W.2d 494, 495 (Tex.Civ.App.—Eastland 1958, no writ). Rule 215 gives the trial court authority to award the amounts awarded as attorney's fees.

■ McFarland next claims the trial court did not comply with the hearing procedure set forth in rule 215 and that reasonable notice of the December 8, 1988 hearing was not provided according to Texas Rule of Civil Procedure 21. McFarland's argument relies on his assumption that the hearing on December 8 was a separate hearing from the one held on December 6 and 7. As we have discussed earlier, that assumption is incorrect.

Rule 21 of the Texas Rules of Civil Procedure requires an application to the court for an order and notice of any hearing on the application be served on the adverse party not less than three days before the time specified for the hearing. Notice was given of the contempt and sanctions hearing October 27, 1988 stating the hearing would be held on October 31, 1988. The hearing was subsequently continued and another notice was filed and served November 18, 1988 stating the hearing on the motion for sanctions and motion for contempt would be held December 5, 1988. Therefore, McFarland received the required notice under rule 21. We overrule McFarland's fourth point of error.

The trial court's judgment is affirmed.

DRAUGHN, Justice, concurring.

I concur that sanctions were warranted in this case, but write separately to state my views about the scope of Rule 215. I cannot accept the dissent's restrictive conclusion that Rule 215 allows sanctions against an attorney for discovery abuses only when there is direct evidence that he *specifically* advised his client to violate some discovery order or process. TEX.R.

CIV.P. 215. I view the wording of the rule to be more descriptive of the attorney's responsibility for and relationship to his disobedient client rather than as an unduly limiting evidentiary requirement. I believe the rule permits the trial court to examine the attorney's conduct to determine accountability for discovery abuses. The conduct to be examined can constitute action or inaction. The inquiry should not be whether the attorney specifically advised the client to thwart discovery. Rather, a court should inquire whether the attorney, by his conduct, permitted or aided the client in thwarting discovery. If the standard were otherwise, an attorney would seldom be sanctioned because, absent open antagonism between the attorney and client, who could testify that the attorney "advised" the client to violate discovery orders? Surely, not the attorney who could always plead privilege and assert: "I'm just the lawyer; I'm not responsible."

I view the lawyer's role under the rule as being more dynamic. His or her conduct must be such that it does not foster or encourage the client to engage in dilatory tactics. The attorney must take the initiative in assuring legitimate discovery processes are promptly completed and must insist that the client do likewise. The attorney must not, by action or inaction, inordinately delay or obstruct legitimate discovery efforts. Such conduct is reviewable by the trial court to determine whether sanctions are appropriate. On appeal, we must evaluate the trial court's actions by a clear abuse of discretion standard. *Brantley v. Etter*, 677 S.W.2d 503, 504 (Tex. 1984). Based on my review of the record in this case, I find the court did not abuse his discretion in determining that sanctions against the attorney were warranted.

Nonetheless, I have serious reservations about the amount of the attorneys fees assessed against appellant which are in excess of the amount prayed for in the pleadings. But given the purpose of such sanctions, to punish and to deter, and the clear abuse of discretion standard by which we must be guided, I cannot find from the record before us that the trial court abused his discretion in the amount he assessed.

SEARS, Justice, dissenting.

I respectfully dissent from the majority opinion.

For the first time in Texas jurisprudence, an attorney has been assessed a monetary sanction for the conduct of his client. The majority opinion holds that the trial court had authority to sanction the attorney pursuant to Rule 215 of the Texas Rules of Civil Procedure. Rule 215 is entitled "ABUSE OF DISCOVERY; SANCTIONS," and Rule 215(2)(b)(2) provides:

If a party or an officer, director, or managing agent of a party or a person designated ... to testify on behalf of a party fails to comply with proper discovery requests or to obey an order to provide or permit discovery, ... the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following:

An order charging all or any portion of the expenses of discovery or taxable court costs or both against the disobedient party or the attorney advising him.

The majority opinion acknowledges that there are no cases from any Texas court which authorize monetary sanctions against an attorney for violations of the provisions of Rule 215. Not finding this a prohibition, the majority attempts to make new law in Texas by apparently holding that we are to be governed by Federal Rules of Civil Procedure, Rule 37. That portion of the federal rule is similar to Rule 215 in that it provides sanctions against a party or the attorney "advising" that party. The majority opinion cites two federal cases as authority to support the imposition of these sanctions against an attorney. The first case cited by the majority opinion is inapposite because sanctions against an attorney were not an issue. However, the court indicated in dicta that such sanctions "could have been" imposed without citing any case law to support the imposition of such a sanction. *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 869 (3rd Cir.1984). In the second case cited, the Ninth Circuit did affirm a $500 sanction against the attorney for the government who was a party to the case. It is interest-

ing to note *why* the federal court imposed the sanction:

> ... the district judge imposed the preclusion sanction on *the government* only after 18 months of delays and failure to comply with court-ordered discovery. The court considered that the government counsel's failure to provide timely answers to interrogatories or to provide at any point prior to trial a final tabulation of the government's damages, may have been more the result of serious understaffing than of bad faith.

*United States v. Sumitomo Marine and Fire Ins. Co.*, 617 F.2d 1365, 1370 (9th Cir.1980) (emphasis added). Further, the court held:

> Rule 37(b) specifically provides that such sanctions shall be assessed against the attorney for the disobedient party. In this case, *because Rule 37(f) prevents the assessment against the United States of fees and expenses not authorized by statute, the district court's only available target for such sanctions was the government's counsel.*

*Id.* at 1371 (emphasis added). Clearly the federal courts used this single case to send a message to *the government* (not the attorney) because Rule 37(f) prohibited sanctions against the government. It is also interesting to note that subsequent to *U.S. v. Sumitomo*, Rule 37(f) was repealed. The majority opinion cites no other federal authority, and I can find none, which authorizes sanctions against an attorney *unless* the attorney is found to have given advice to the client that resulted in the sanctionable conduct.

Where it is clear the attorney *advised* the client to disobey court-ordered discovery, the federal courts have upheld sanctions against the attorney. When the attorney ignored court orders and advised a client he did not have to establish a debtor-in-possession account or obtain bankruptcy court approval for the use of cash generated from hotels involved in a bankruptcy proceeding, sanctions against the attorney were proper. *Midwest Properties No. Two v. Big Hill Investment Co.*, 93 B.R. 357, 363 (N.D.Tex.1988). Also, when attorneys advised clients not to comply with a court order to produce documents, and advised their clients not to

appear at court-ordered depositions, sanctions against the attorneys were proper. *Goldman v. Alhadeff*, 131 F.R.D. 188 (W.D.Wash.1990). Attorneys who fail to produce parties for deposition, after ordered to do so by the court, are punishable under the federal rules by sanctions against the attorney violating the court order. *Mangas Electronics v. Masco Corp.*, 871 F.2d 626 (7th Cir.1989).

Turning to the evidence cited in the majority opinion as support for affirming the sanctions against appellant, the opinion discusses documents sought to be discovered in Salisbury, Maryland. There is no pleading, evidence, information or allegation in the record, or in the majority opinion, which alleges that appellant had any knowledge of or control over documents located in the state of Maryland. There is simply no showing that appellant was in any way at fault if attorney for plaintiff was unable to discover or retrieve such documents in Maryland. The majority opinion next discusses an employee of appellant who was responsible for preparing defendant Wilson's Answers to Interrogatories and Request for Production, and seems to find it reprehensible that the attorney working with the appellant's associate accepted the client's statement that everything had been produced. If a client tells his attorney that he has produced everything that has been requested, but in fact has not, the attorney shall not be sanctioned for the lies of his client. There are no pleadings or proof that appellant advised defendant Wilson to lie, or even that appellant had knowledge that the client had lied.

The majority opinion next discusses the infamous conversation in the elevator where the appellant failed to be cordial to plaintiff's attorney. The conversation centered around plaintiff's attorney asking the appellant if he would be present at defendant Wilson's deposition the following day, and appellant responded that he didn't know. Plaintiff's attorney seemed to take that response as a personal affront, she mentioned it in every pleading filed subsequent to that date, and used it as a basis

for an "emergency" motion for sanctions. Based upon the recitation in the judgment, appellant was apparently sanctioned for his failure to be cordial.

This controversy in the elevator centers around the noticed deposition of defendant Wilson for October 18, 1988. Prior to that time, the defendant Wilson had filed personal bankruptcy in the federal court. Attorney for plaintiff was successful in getting a stay lifted by telling the federal court that the case was set for trial in the civil district court of Harris County. However, affidavits in this record indicate that the case was not set for trial and it appears that the stay was lifted by misrepresentation to the federal court. Nonetheless, appellant contends that he had not represented defendant Wilson since the date of the pro se bankruptcy filing and that it was not economically feasible to attend the deposition on behalf of the corporate defendants. Also, on the morning of October 18, 1988, defendant Wilson filed a motion with the trial court requesting permission to proceed pro se and advised the court that appellant McFarland was no longer his attorney. Attached to the motion was a certificate of service on plaintiff's attorney.

On October 18, 1988, defendant Wilson appeared as noticed for his deposition and appellant McFarland, who was no longer his attorney, did not appear. Plaintiff's attorney chose not to continue with the deposition because appellant was not present. She then used appellant's absence as a basis for another "emergency" motion for sanctions. Neither the plaintiff's attorney nor the majority opinion has cited us to any authority that prohibits an attorney from proceeding with a noticed deposition of a party simply because the party's attorney is not present. Further, I am not aware of any such prohibition. Subsequently, appellant was assessed monetary sanctions for alleged costs incurred by the plaintiff who, for her own reasons, terminated the deposition. The decision not to depose defendant Wilson was made solely by plaintiff's attorney, and the failure to proceed with the deposition on that date cannot in any way be attributed to any act or omission on the part of appellant.

The majority opinion concludes, based upon the events as discussed above, that the "discovery abuses resulted from McFarland's dilatoriness, and the trial court was within its authority to impose sanctions." The majority then overrules appellant's first, second, and fifth points of error.

It is of particular concern to me that there is no allegation in any pleading, and there is no discussion or allegation that any evidence exists, that appellant at any time "advised" a party to this lawsuit to disobey discovery orders of the court. It is my firm belief that a trial court is totally devoid of any authority to assess monetary sanctions against an attorney in the absence of sufficient evidence to establish that the attorney's advice to his client resulted in the conduct complained of and found abusive by the trial court. See Kilgarlin & Jackson, Sanctions for Discovery Abuse under New Rule 215, 15 St. Mary's L.J. 767 (1984). Both the Texas and the Federal rule are explicit in their language concerning when sanctions may be imposed against an attorney, and the operative word is "advising". It is clear to me that absent proof that the attorney advised the party to commit the act or omission complained of, there is simply no authority for sanctions against the party's attorney. As a side note, I bring attention to the only portion of the rule which provides for sanctions against a non-party. Tex.R.Civ.P. 215(2)(c) provides that when a non-party fails to comply with the discovery orders pursuant to rule 167, the court issuing the order may treat the failure to obey as a contempt of court. Therefore, a trial court only has jurisdiction to find a non-party in contempt for failure to comply with discovery orders, and the court is without jurisdiction to impose sanctions for noncompliance against a non-party. Texas Attorney General's Office v. Adams, 793 S.W.2d 771 (Tex.App.—Fort Worth 1990, no writ).

The majority opinion also errs in affirming the trial court sanctions because: Tex. R.Civ.P. 215(2)(b)(2) provides only for sanctions in the amount of "the expenses of discovery or taxable court costs or both ...," and subparagraph (8) provides only

for the payment of reasonable expenses including attorney fees. It is clear from the judgment of the court, which will be discussed later, that the trial court assessed sanctions in excess of the authority provided pursuant to Rule 215. Further, but of equal importance, the trial court was wholly without authority to consider *sua sponte* matters that had not been alleged in the motion for sanctions. *Zep Manufacturing Co. v. Anthony,* 752 S.W.2d 687 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding).

The motion upon which the trial court issued the sanctions, Plaintiff's Motion for Sanctions—Motion to Compel—Motion for Contempt, was filed on October 18, 1988. This motion requested only two sanctions against appellant. In paragraph VII, plaintiffs requested:

(1) that the trial court strike the pleadings of defendant Wilson,

(2) that the trial court strike the pleadings of the defendant corporations,

(3) that the trial court assess $2500 sanctions against defendant Wilson and appellant McFarland, jointly and severally, for *the conduct of defendant Wilson regarding the depositions in July 1988,* and

(4) that the trial court assess $2000 sanctions against defendant Wilson and appellant attorney, jointly and severally, for the costs incurred in the depositions of October 18th.

In the judgment made the basis of this appeal, not only did the trial court strike the pleadings of the defendant Wilson and the defendant corporations, and find all defendants liable and all causes of action pled by the plaintiff established as a matter of law, but the trial court further assessed the following sanctions against appellant:

(1) $9,837.50 as sanctions assessed against the defendants and the appellant attorney, jointly and severally, as reasonable attorney fees as a result of abuse of discovery processes.

(2) $2,323 as sanctions assessed against defendant and the appellant attorney, jointly and severally, as attorney fees and video deposition expenses in attempting to take defendant Wilson's deposition October 18, 1988, as well as video technician expenses pursuant to an evidentiary hearing on the motion for sanctions held December 8, 1988.

(3) $6,000 as sanctions against defendants and appellant attorney, jointly and severally, to reimburse necessary and reasonable attorney fees for abuse of discovery process.

(4) $2,000 as sanctions against the appellant attorney "to compensate plaintiffs for the inconvenience caused by [appellant's] conduct and to discourage and deter such unprofessional and uncooperative conduct by an officer of this Court in the future."

(5) $2,000 as sanctions against appellant attorney "to compensate plaintiff Estrada for the inconvenience caused by [appellant's] conduct and to discourage and deter such unprofessional and uncooperative conduct by an officer of this Court in the future."

Although the plaintiff's motion for sanctions requested sanctions for two specific violations, the court found five. Further, although the motion for sanctions requested monetary sanctions against the defendant and the appellant jointly and severally in the amount of $4,500, the trial court assessed sanctions against the appellant in the amount of $22,160.50. Clearly, the actions of the trial court are wholly without support in Texas case law, in the Texas Rules of Civil Procedure, or even in the Federal Rules of Civil Procedure.

Sanction (1) is not connected to any specific request for sanctions or order of the court which was violated by the appellant. If it was for the failure of defendant Wilson to appear for deposition on July 29, 1988, that deposition was stayed by federal law due to the bankruptcy action filed by Wilson. *See* 11 U.S.C.A. § 362(a)(1) (West Supp.1990). If it was for something else, not specifically requested in the Motion for Sanctions, the trial court had no authority to impose this sanction. *Zep Manufacturing Co.,* 752 S.W.2d at 689.

Sanction (2) was requested by motion; however, the deposition was terminated solely by attorney for plaintiff. Appellant was under no court order or legal duty to

appear and cannot be sanctioned for something not authorized by Rule 215.

Sanction (3) was not requested in the Motion for Sanctions; therefore, it was error as shown earlier in this opinion.

Sanctions (4) and (5) are the most egregious. This is no authority for the trial court to assess a monetary sanction against an attorney for the "inconvenience" he allegedly caused a party.

I also disagree with the majority conclusion that the hearing on the Motion for Sanctions was a three day hearing, and that appellant failed to bring a complete record to this court because we do not have the statement of facts from the hearings on December 6–7, 1988. (We do have the statement of facts from December 8, 1988).

In the order made the basis of this appeal, the trial court stated:

An evidentiary hearing of the Motions for Contempt occurred on December 6 and 7, 1988. The Court has not ruled on the Motions for Contempt and such motions are still being considered by the Court at this time. This order pertains only to the Plaintiffs' motions seeking sanctions for discovery abuses pursuant to Rule 215 of the Texas Rules of Civil Procedure.

On Thursday, December 8, 1988, a *complete evidentiary hearing* was held by this Court on the Plaintiffs' Motions Requesting Sanctions for discovery abuses. (empahsis added).

Therefore, the majority errs in concluding "we must assume the evidence from the first two days supports the trial court's orders." Appellees' brief at page 19 discusses notice to appellant at the end of the "first part of the bifurcated evidentiary hearing which took two days." This error by the majority resulted in their overruling points of error three and four related to due process and notice.

In summary, the trial court and the majority opinion erred in assessing and affirming sanctions against appellant in the absence of pleading and proof that appellant *advised* the party to commit the conduct complained of. Rule 215 does not

provide authority for the trial court to assess monetary sanctions against appellant under these pleadings and facts.

Further, the trial court erred in assessing and the majority erred in affirming any and all sanctions that were assessed by the court *sua sponte*. Without pleadings, proof, and a request for such specific relief, the trial court had no authority to assess any sanctions *sua sponte*. Accordingly, I would sustain all points of error and I would reverse the judgment of the trial court as to all sanctions against the appellant, and affirm the remainder of the judgment.