

# NUMBER 13-18-00269-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**BOHYUN KIM,** **Appellant,**

**v.**

**MYOUNG KI KIM,** **Appellee.**

## On appeal from the 93rd District Court
## of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Bohyun Kim appeals the trial court's order granting appellee Myoung Ki Kim's motion for death penalty sanctions and for default judgment. By two points of error, Bohyun claims the trial court erred because (1) it lacked subject matter jurisdiction to preside over the suit; and (2) the imposed sanctions were excessive, shared no relation to her alleged conduct, and were in violation of her due process rights. We affirm.

## I.  BACKGROUND

On April 1, 2016, Bohyun and Myoung entered into a mediated divorce settlement agreement under which they agreed to share possession of their two minor children. That agreement was reduced to a final decree on April 6, which included a provision dictating that Bohyun had "[t]he exclusive right to designate the primary residence of the children restricted to Hidalgo County, Texas."[1] Bohyun was also awarded the couple's former shared residence in Hidalgo County.

On September 23, 2016, Myoung filed suit against Bohyun in the trial court, alleging common law fraud and seeking monetary relief[2] between $200,000 and $1,000,000, after Bohyun left the country with their children. Myoung claims that Bohyun fraudulently induced Myoung to relinquish his interest in their marital home in exchange for Bohyun's fraudulent agreement to abide by the geographic restriction with respect to where their children would reside. In emails attached to Myoung's petition, Bohyun notified Myoung that she left the country with their children on June 20, 2016, claiming that they would return on August 17. On August 17, however, Bohyun notified Myoung that she and the children would not be returning.

On March 20, 2017, after Myoung had moved for default judgment, Bohyun filed an original answer and general denial. Myoung subsequently propounded written

---

[1] Though Bohyun argues otherwise on appeal, the decree explicitly dictates a geographic restriction:

> IT IS ORDERED that the primary residence of the children shall be Hidalgo County, Texas, and the parties shall not remove the children from Hidalgo County, Texas for the purpose of changing the primary residence of the children until modified by further order of the court of continuing jurisdiction or by written agreement signed by the parties and filed with the court.

[2] Myoung specifically prayed for, in part, an "order requiring [Bohyun] to pay restitution [to him] in the amount of his value in [their previously shared property]."

interrogatories and requests for production on April 10. The interrogatories included the following:

4. If any diaries, memoranda, journals, or calendars, including electronic diaries, memoranda, journals, or calendars, . . . that exist that relate to your decision to leave Hidalgo County, Texas, describe each item and state its location.

5. Where are you currently living—please include your current address and phone number.

6. Where are your children located—please include their current address and phone number.

7. Why did you put your home up for sale.

8. Why have you not returned to Mission, Texas.

The requests for production included:

5. Produce all correspondence between you and anyone living in the United States of America, whether electronic or on paper, from June 2016 until the present time.

6. Produce copies of all correspondence, electronic or otherwise, between you and Chu Torres.

7. Produce copies of all attorney's fee contracts with the Law Firm of Torres, Cantu, and Associates, P.C.

8. Produce copies of all correspondence, contracts or emails between you (or any of your agents) and any movers that moved personal property in or out of your house in Mission, Texas.

9. Produce copies of any paperwork, showing how much you are asking for the sale of your home.

On May 8, Bohyun responded by generally claiming that Myoung's discovery requests were "unreasonably frivolous, oppressive, or harassing . . . an invasion of personal, constitutional, or property rights . . . [and] ask[ed] for information that is not

relevant and is not reasonable [sic] calculated to lead to the discovery of admissible evidence."

On June 20, Myoung filed a "Motion to Compel Responses to Interrogatories and Requests for Production," challenging Bohyun's refusals. The trial court held a hearing on June 26 on Myoung's motion to compel and ordered Bohyun to abide by requests for production numbers five, eight, and nine, and to answer interrogatory question number four. Myoung claimed in a later motion to the court that Bohyun failed to follow the court's orders.

On June 29, Myoung filed his "Motion to Order [Bohyun's] Appearance at Deposition." Myoung contended he inquired on Bohyun's available dates on March 21 and received no response. Myoung then unilaterally scheduled a deposition for April 17, notifying Bohyun of his intent to take her oral deposition. Bohyun failed to appear.

On July 21, Bohyun responded to Myoung's motion to order her appearance. Bohyun stated she has "at all times during the pendency of this suit . . . resided in Korea." Bohyun claimed Myoung was also currently in Korea, and the two parties were "involved in civil litigation in a Korean court of law." Bohyun alternatively requested that the Court order her deposition to be taken "telephonically in Korea" on a mutually agreed upon date. Bohyun subsequently filed a "Traditional Motion for Summary Judgment," arguing Myoung's suit is barred by the statute of frauds, res judicata, and collateral estoppel.

On July 24, the trial court heard Myoung's motion to order Bohyun's appearance for deposition, Bohyun's motion for summary judgment, and Myoung's request for continuance on Bohyun's motion for summary judgment. Bohyun did not attend. The court took Bohyun's motion for summary judgment under advisement, abated Myoung's motion

to order appearance, and ordered both parties to personally appear before the court on September 18. The September hearing was moved to October 23, after counsel for one of the parties expressed unavailability. On October 23, Bohyun failed to appear in person, and the trial court granted Myoung's motion to compel Bohyun's appearance for deposition.

On November 1, Myoung served Bohyun notice for an oral and videotaped deposition to be taken on November 15. Bohyun filed a "Motion to Quash [Myoung's] Notice of Deposition," claiming that Myoung failed to coordinate with Bohyun for an appropriate time and date and that neither Bohyun nor Bohyun's counsel were available on the date and time requested. On November 27, the court denied Bohyun's motion to quash.

On December 5, Myoung filed a "Motion for Death Penalty Sanctions and for Default Judgment" on the basis that Bohyun refused to comply with discovery requests and repeatedly disregarded the trial court's orders. Bohyun responded, arguing that the requested sanctions were excessive because the "majority of the conduct [Myoung] complains of is [Bohyun's] failure and inability to travel 7,140 miles to attend her deposition and attend status conference hearings." Bohyun maintained that Myoung could "easily obtain the discovery they are requesting by conducting [her] deposition by remote means."

On January 17, 2018, the trial court entered an order granting Myoung's motion for death penalty sanctions and for default judgment. The court's order states:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Death Penalty Sanctions are imposed against Defendant and that all of Defendant's pleadings are stricken from the record.[3]

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that BOHYUN KIM, Defendant herein, is liable to MYOUNG KI KIM, Plaintiff herein, in the amount of $137,450.00, plus pre-judgment interest at the rate-of 5% from September 23, 2016 until the date of Judgment, plus all costs of court, plus post-judgment interest at the rate of 5% on the entire judgment from the date of this Judgment until satisfied. . . .

All other and further relief, not expressly granted herein, is hereby DENIED.

This appeal followed.

## II.  DISCUSSION

### A.  Jurisdiction

Bohyun first argues that the trial court lacked subject matter jurisdiction to preside over the suit. The issue of whether the trial court lacks jurisdiction is to be reviewed de novo by this Court. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Chavez v. McNeely*, 287 S.W.3d 840, 843–44 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

The Texas Constitution provides that a district court's jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." TEX. CONST. art. V, § 8; *see also* TEX. GOV'T CODE ANN. § 24.008 (providing that the district court possesses "the jurisdiction provided by Article V, Section 8, of the Texas Constitution," and "may hear and determine any cause that is cognizable by courts of law

---

[3] Bohyun argues on appeal that Myoung's suit is barred by res judicata. The trial court's order, however, struck Bohyun's pleadings. As such, the merits of Bohyun's res judicata defense are not before us on appeal.

or equity"). Unless a contrary showing is made, "[c]ourts of general jurisdiction presumably have subject matter jurisdiction." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002).

Bohyun contends that Chapter 9 of the Texas Family Code confers exclusive continuing subject-matter jurisdiction to the court that rendered the divorce decree to clarify and to enforce the decree's property division. *See* TEX. FAM. CODE ANN. § 9.002 ("[T]he court that rendered the decree of divorce or annulment retains the power to enforce the property division as provided by Chapter 7, including a property division and any contractual provisions . . . ."). This jurisdiction, however, does not encompass all tangentially related decree matters. *See Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (per curiam) ("[I]t is beyond the power of the [divorce] court to 'amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment.'" (quoting TEX. FAM. CODE ANN. § 9.007(a))); *Moore v. Moore*, 568 S.W.3d 725, 730 (Tex. App.—Eastland 2019, no pet.) ("[T]here is no such limitation in Chapter 9 for suits involving the division of real property—which includes the division of oil, gas, and other mineral interests."); *Chavez*, 287 S.W.3d at 845 (holding that although a party's breach of contract action was "based upon an agreement incorporated into a final divorce decree," the action to recover money damages invoked the general jurisdiction of the district court).

Here, Myoung sought no divestment or enforcement of any property awarded in the decree. Myoung narrowly and unequivocally requested "relief for damages he suffered when [Bohyun] committed fraud during the divorce proceedings." Moreover, the trial court's judgment in the amount of $137,450.00 reflects Myoung's request for relief;

7

the order did not modify, amend or enforce the decree's property division in any manner. Therefore, we conclude the trial court had jurisdiction to hear Myoung's common law fraud action. *See Chavez*, 287 S.W.3d at 845; *see also Ishee v. Ishee*, No. 09-15-00197-CV, 2017 WL 2293150, at *4 (Tex. App.—Beaumont May 25, 2017, no pet.) (mem. op.). We overrule Bohyun's first issue.

## B.     Death Penalty Sanctions

Bohyun next avers that the trial court erred by assessing death penalty sanctions after she failed to comply with Myoung's discovery requests because: (1) her conduct did not warrant death penalty sanctions; (2) no direct relationship exists between the sanctions and conduct; (3) the sanctions were more severe than necessary; and (4) the sanctions were imposed in violation of her constitutional due process rights

Texas Rule of Civil Procedure 215.2 allows a trial court to sanction a party for failure to comply with a discovery order or request. *See* TEX. R. CIV. P. 215.2. Discovery sanctions serve three purposes: (1) to secure the parties' compliance with the discovery rules; (2) to deter other litigants from violating the discovery rules; (3) to punish parties who violate the discovery rules; and (4) to compensate the aggrieved party for expenses incurred. *Pressil v. Gibson*, 558 S.W.3d 349, 353 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Among the sanctions available under rule 215.2 are orders "striking out pleadings or parts thereof," "dismissing with or without prejudice the actions or proceedings or any part thereof," and "rendering a judgment by default against the disobedient party." TEX. R. CIV. P. 215.2(b)(5). These sanctions, which adjudicate a claim and preclude presentation of the merits of the case, are often referred to as "death

8

penalty" sanctions. *See Cire v. Cummings*, 134 S.W.3d 835, 840 (Tex. 2004); *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 732 (Tex. 1993) (orig. proceeding).

The decision to impose a sanction is left to the discretion of the trial court and will be set aside only upon a showing of abuse of discretion. *Altesse Healthcare Sols., Inc. v. Wilson*, 540 S.W.3d 570, 574 (Tex. 2018) (per curiam). Though the trial court is given the broadest discretion in choosing the appropriate sanctions, imposed sanctions must be "just." *Petroleum Sols., Inc. v. Head*, 454 S.W.3d 482, 489 (Tex. 2014). Reviewing courts generally follow a two-part test in determining whether a particular sanction for discovery abuse is just. *Id.* "First, a direct relationship must exist between the offensive conduct, the offender, and the sanction imposed. . . . Second, a sanction must not be excessive, which means it should be no more severe than necessary to satisfy its legitimate purpose." *Id.*; *Cire*, 134 S.W.3d at 842 ("[I]n all but the most egregious and exceptional cases, the trial court must test lesser sanctions before resorting to death penalty sanctions.").

As a procedural matter, we note that no reporter's record was filed in this case. Texas Rule of Appellate Procedure 37.3(c) provides that, when no reporter's record has been filed because appellant failed to pay for the reporter's record, appellate courts may consider and decide certain issues nonetheless if (1) a clerk's record has been filed and (2) appellant was given notice and a reasonable opportunity to cure. TEX. R. APP. P. 37.3(c)(2). In this case, a clerk's record has been filed, but Bohyun did not request the reporter's record, nor did she pay the reporter's fee. This Court gave Bohyun notice and an opportunity to cure. Bohyun has since notified this Court of her wishes to proceed without the reporter's record. Because the requirements of rule 37.3(c)(2) have been satisfied, we proceed accordingly. *See id.*

9

Myoung argues that, irrespective of Bohyun's failure to request the reporter's record, the clerk's record affirmatively shows the trial court's order was just because: (1) Bohyun had an established history of deliberately disregarding the court's orders; (2) a hearing was held specifically for the trial court to consider sanctions, and Bohyun was represented by counsel though Bohyun was not present; and (3) the trial court issued death penalty sanctions, as its order states, only "after considering the evidence and hearing the arguments of counsel."

According to the clerk's record, seven months prior in July 2017, following a hearing on Myoung's motion to compel responses to interrogatories and requests for production, the trial court issued an order requiring that Bohyun supplement her responses; Bohyun failed to comply. On October 23, both parties were ordered to appear in person for Myoung's motion to compel Bohyun's appearance at a deposition; Bohyun did not appear. Then after failing to appear at a court-ordered deposition on November 15, Bohyun also did not appear at the November 27 hearing on her motion to quash. *See TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (orig. proceeding) (providing that death penalty sanctions "should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules"); *5 Star Diamond, LLC v. Singh*, 369 S.W.3d 572, 579 (Tex. App.—Dallas 2012, no pet.) (concluding that prolonged general resistance to discovery, despite multiple orders compelling responses, justified death-penalty sanction); *see also Buck v. Estate of Buck*, 291 S.W.3d 46, 55–56 (Tex. App.—Corpus Christi–Edinburg 2009, no pet.) ("In determining whether to impose death penalty sanctions, the trial court is not limited to

considering only the specific violation for which sanctions are finally imposed but may consider everything that has occurred during the history of the litigation.").

Moreover, we presume the omitted reporter's record supports the sanctions order. *See In re Le*, 335 S.W.3d 808, 813–14 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding) ("In the context of a "death penalty" sanctions case, . . . it is incumbent upon [the appellant] to provide this court with a record that would enable this court to determine whether the trial court abused its discretion. . . . [T]his court cannot and will not find an abuse of discretion on an incomplete record."); *McFarland v. Szakalun*, 809 S.W.2d 760, 764 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (providing that a trial court did not abuse its discretion in applying its sanction because "[w]hen the record is incomplete, we must assume that the portion omitted supports the correctness of the trial court's judgment"). Therefore, following consideration of the limited record before us, we cannot say the trial court abused its discretion. *See In re Le*, 335 S.W.3d at 813–14.

With respect to Bohyun's claim that the court's sanctions violated her due process rights, we note that a proper application of a sanction rule will, as a matter of law, support a presumption that due process rights have been satisfied. *McFarland*, 809 S.W.2d at 765. Because we found no abuse of discretion, we reject this claim.

We overrule Bohyun's last issue on appeal.

### III.     CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Delivered and filed the
5th day of March, 2020.

11